ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOURTEENTH JUDICIAL CIRCUIT |
| COUNTY OF BEAUFORT | ) | |
| | ) | C/A NO.: 2017-CP-07-_____ |
| AYE AUNG, | ) | |
| | ) | |
| | ) | |
| | ) | SUMMONS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEICO and SHARON COGDILL, | ) | |
| | ) | |
| Defendants. | ) | |

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

/s/ Patrick W. Carr
Patrick W. Carr, Esquire
SC Bar No. 15585; Fed. I.D. No. 07190
E-mail: patrick@hiltonheadlawyers.com
BERRY & CARR, P.C.
Attorneys at Law
2 Spanish Wells Road
Hilton Head, SC 29926
Dated: February 1, 2017          Phone: (843) 686-5432
Facsimile: (843) 786-6173
Hilton Head Island, South Carolina    Attorneys for Plaintiff Aye Aung

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF BEAUFORT | ) | FOURTEENTH JUDICIAL CIRCUIT |
| | ) | |
| AYE AUNG, | ) | C/A NO.: 2017-CP-07-_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| GEICO and SHARON COGDILL, | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, Aye Aung, complaining of the Defendants herein, would respectfully show unto this Honorable Court:

## FACTUAL BACKGROUND, PARTIES, JURISDICTION

1.     Plaintiff, Aye Aung (hereafter "Aye"), is a citizen and resident of Beaufort County, State of South Carolina.

2.     Upon information and belief, Defendant GEICO is a foreign corporate entity which employs agents, transacts business, and enters into contracts in the State of South Carolina, County of Beaufort, through its agents, servants and/or employees.

3.     Upon information and belief, Defendant GEICO is licensed and authorized under the laws of the State of South Carolina and through the South Carolina Department of Insurance to write and issue policies of insurance in South Carolina, including specifically personal automobile policies of insurance.

4.     Upon information and belief, Defendant Sharon Cogdill is a citizen and resident of Lexington County, South Carolina.

5.     Defendant Cogdill is and was at all times herein acting as a full time employee of Defendant GEICO and served the interests of GEICO in her capacity as an insurance adjuster or other insurance claims professional.

6.     Upon information and belief, at all times herein, Defendant GEICO exercised control and direction over the behaviors and practices of Defendant Cogdill in her role as an insurance claims professional within their organization.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

7.     Defendant GEICO is responsible for the tortious conduct of Defendant Cogdill while acting in the course and scope of her employment with GEICO pursuant to the principle of respondeat superior.

8.     At all times pertinent herein, the Defendants were subject to the laws of the State of South Carolina by voluntarily submitting to regulation by the South Carolina Department of Insurance.

9.     Upon information and belief, at all times herein, Defendant GEICO maintains its principal place of business and/or corporate headquarters in Chevy Chase, Maryland, and also operated its automobile insurance claims center through its central office located in Macon, Georgia.

10.     Upon information and belief, GEICO is the second largest auto insurer in America.

11.     Defendant GEICO actively markets and sells insurance products and services in South Carolina, including Beaufort County.

12.     Defendant GEICO derives substantial revenues and profits from its activities relating to the sale and issuance of insurance policies in South Carolina, including Beaufort County.

13.     Defendant GEICO is and was at all times herein actively engaged in the process of evaluating, adjusting, defending, and responding to claims for automobile insurance policy benefits made by and against their policy holders, including specifically Plaintiff Aye Aung herein.

14.     Upon information and belief, despite the use of the word "government" in its name, Defendant GEICO has always been a private corporation not affiliated with any governmental entity.

15.     Upon information and belief, Defendant GEICO is a wholly owned subsidiary of its parent company, Berkshire Hathaway.

16.     Upon information and belief, Defendant GEICO insures more than 22 million vehicles through more than 14 million policy holders.

17.     Upon information and belief, Defendant GEICO has a business model that is focused on increasing market share and maximizing profits for the company.

18.    Upon information and belief, Defendant GEICO's business model of profit maximization is supported largely by increasing premiums charged to its customers, and, by refusing to pay claims or engaging in systematic efforts to delay, deny, and minimize claims payments made to their policy holders.

19.    Upon information and belief, Defendant GEICO in 2012 spent more than $1.1 billion in advertising, which was approximately 6.8% of its revenue.

20.    Upon information and belief, Defendant GEICO has many subsidiary or affiliate entities which bear its name on their insurance policies and products, and these entities include Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company, and GEICO County Mutual Insurance Company.  Each and all of these affiliates are treated as one and the same in this lawsuit and are collectively referred to as GEICO based upon their synthesis of conduct and amalgamation of interests with respect to the claims and causes of action raised herein by GEICO customer Aye Aung.

21.    Upon information and belief, Defendant GEICO has been sued numerous times by various claimants and policy holders for bad faith insurance practices, resulting in several jury verdicts against it for multiple millions of dollars, but none of those verdicts have resulted in any systematic or meaningful changes in the behaviors of GEICO with respect to its claims evaluation and claims payment practices.

22.    Defendant Cogdill is being sued individually and in her representative capacity as agent and employee of GEICO.

23.    At the time of the events described herein, Defendants GEICO and Cogdill were participants in the defense, evaluation, settlement discussions, and responses made by GEICO to claims made by Plaintiff under her automobile insurance policy.

24.    Plaintiff Aye Aung was sold and issued a policy of automobile insurance in the State of South Carolina by Defendant GEICO.

25.    This policy of automobile insurance issued by GEICO to Plaintiff was supported by good and valid consideration, and it was in effect at the time of the events described herein.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

26.    Plaintiff Aye Aung dutifully paid all premiums due to GEICO in order to obtain the subject policy of automobile insurance, and Plaintiff fully performed and met all of her obligations pursuant to the subject policy of automobile insurance.

27.    Plaintiff Aye Aung purchased this policy of automobile insurance from GEICO so that she and her family members would be covered and taken care of by GEICO in the unfortunate event that they ever became involved in a traffic collision resulting in injuries or other damages.

28.    Plaintiff Aye Aung did not purchase this policy of automobile insurance from GEICO with the idea or understanding that she would ever be forced to endure the hassle, expense, and delays associated with litigation, nor be forced to defend unmeritorious defenses at trial, nor be subjected to burdensome and unfair claims evaluation practices, should she ever need to make a claim for benefits due under the subject policy.

29.    GEICO is keenly aware of this, and GEICO and its employees routinely deny, delay, and minimize claims for benefits presented by their policyholders, thereby forcing their policyholders, including specifically Plaintiff herein, to endure unnecessary and unwanted litigation, hassle, delay, and expenses.

30.    GEICO routinely and systematically takes positions that are without merit in evaluating and responding to claims for benefits presented by and against their policy holders, all in an effort to further the profit motives of GEICO, and all in derogation of the best interests of their own policy holders.

31.    While her policy of automobile insurance with GEICO was in effect, Plaintiff became involved in a severe motor vehicle crash caused by Meredith Lynn Daley.

32.    After this traffic collision, Plaintiff made a good faith claim for benefits due to her under the subject policy of automobile insurance issued by Defendant GEICO.

33.    This collision was severe in nature and resulted in the total loss of Plaintiff's vehicle.

34.    This collision caused injuries to Plaintiff's body.

35.    The injuries caused to Plaintiff from this collision were and are permanent in nature.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

36.    This collision caused Plaintiff to incur medical expenses, time away from her work and family endeavors, loss of enjoyment of life, physical pain and suffering, mental anguish, emotional distress, general inconvenience, and loss of her vehicle.

37.    The at-fault driver in this collision was insured with another automobile insurance company which made a reasonable settlement proposal to Aye without forcing the matter into litigation.

38.    Plaintiff accepted the near policy limits settlement proposal from the at fault driver's automobile insurance company, and thereafter presented her claims for her first party coverage, or underinsured motorist coverage benefits, due to her under her policy of automobile insurance issued by GEICO.

39.    Throughout the claims evaluation and response process from GEICO to their own policy holder here, Aye Aung, GEICO and its agents and employees acted in bad faith with respect to Aye Aung's claims for damages or benefits due, and this conduct persists to the present day.

40.    Aye Aung retained counsel to represent her in her claims for benefits due under her policy with GEICO.

41.    In that regard, Aye Aung and her counsel requested a complete copy of her insurance policy issued by GEICO so as to become completely familiar with its terms, conditions, benefits, and coverage limits.

42.    GEICO failed and refused to provide their policy holder and her counsel with a copy of her own insurance policy in this matter, and this is a common practice followed by GEICO and its employees.

43.    At all times after Aye Aung was injured in a motor vehicle crash and presented a claim for benefits under her policy issued by GEICO, GEICO and its employees acted in bad faith pursuant to company policies adopted and enforced by GEICO.

44.    GEICO never provided a fair and reasonable evaluation of Aye Aung's claims under her automobile insurance policy, and this is a common practice followed by GEICO and its employees.

45.    GEICO, in its claims evaluation process in this matter, never provided any reasonable attention, measure, evaluation, or offer of benefits to Aye Aung for her

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

noneconomic harms and losses such as physical pain and suffering, mental anguish, emotional distress, general inconvenience, and loss of enjoyment of life, and this is a common practice followed by GEICO and its employees.

46.     GEICO does not train nor even permit its insurance adjusters, claims evaluators, or other employees within their organization to assign appropriate or meaningful financial value to the noneconomic losses claimed by its policy holders when they are injured in motor vehicle crashes, and this is a common practice followed by GEICO and its employees.

47.     GEICO does not train, teach, or permit its insurance adjusters, claims evaluators, or other employees within their organization to know and understand all of the material elements of damages recoverable by their policy holders in a negligence action in South Carolina, and this is a common practice followed by GEICO and its employees.

48.     Following the subject collision, Plaintiff properly presented claims for her damages to her automobile insurance company, GEICO, pursuant to her first party underinsured motorist coverage.

49.     Following the subject collision, Plaintiff and her counsel expressed to GEICO and its employee representatives, including Defendant Cogdill herein, that her injuries and damages were substantial in nature and would likely exceed her available underinsured motorist policy limits.

50.     Following the subject collision, Plaintiff and his counsel expressed to GEICO and its employee representatives, including Defendant Cogdill herein, the prospect of substantial punitive damage exposure associated with Plaintiff's claims due to the reprehensible conduct of the at fault driver who caused the collision, the severe nature of the crash, and the circumstances leading up to same.

51.     Punitive damages are specifically covered as part of an insured's damages under a policy of automobile insurance in South Carolina, by legal definition provided by statute.

52.     Following the subject collision, Plaintiff and her counsel repeatedly expressed their desire to settle Plaintiff's claims within her available underinsured

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

motorist policy limits and avoid the hassle, delay, expense, and uncertainty associated with litigation or trial.

53.     Following the subject collision, Defendant GEICO and its employee representatives, including specifically Defendant Cogdill herein, refused to fairly evaluate, negotiate, or resolve Plaintiff's claims for underinsured motorist benefits, nor did these Defendants participate in the claims evaluation, mediation, defense, and settlement processes in good faith.

54.     Following the subject collision, GEICO and its employees forced Plaintiff into litigation, and to trial, and to mediation, and through post-trial motions, against her wishes, and this is a common practice followed by GEICO and its employees.

55.     Following the subject collision, the highest settlement proposal made by Defendants to Plaintiff for her underinsured motorist benefits claims was $2,500.

56.     This settlement proposal submitted by the Defendants was so grossly low, inadequate, and without reasonable relation to the injuries and damages suffered by Plaintiff following the subject collision, that the offer in and of itself is evidence of bad faith.

57.     Defendants herein never tendered the underinsured motorist benefits claimed by Plaintiff prior to trial, even those sums that were previously offered as not being reasonably in dispute, thereby forcing Plaintiff to endure an expensive and uncomfortable jury trial.

58.     The court system in South Carolina is flooded and overwhelmed with motor vehicle accident cases, many of which could be and should be settled without a trial.

59.     The court system in South Carolina also has a mandatory mediation procedure that is designed to foster settlement and resolution of civil cases such as that involving Aye Aung, but the mediation process is too often unsuccessful with GEICO as a participant due to their systematic bad faith practices described herein above and below.

60.     GEICO and its employee representatives have routinely and systematically engaged in claims handling practices that force many claims and cases to trial in an effort to maximize their own profits.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

61.    Plaintiff in this matter was forced to file a lawsuit and attend trial in an effort to secure fair compensation for the underinsured motorist benefits she was due under the subject policy of automobile insurance issued by GEICO, all due to the bad faith conduct engaged in by each and all of the Defendants herein.

62.    GEICO hired counsel to defend the lawsuit and attempt to defeat, contest, minimize, and undermine the claims made by Plaintiff.

63.    GEICO permitted and directed its hired counsel to deny material factual allegations about the subject collision which were not legitimately in dispute, and to raise legal defenses relating to fault for the subject collision which were without merit.

64.    The litigation process and tactics engaged in by GEICO, its employee representatives, and its hired counsel, are commonplace and routine, all designed to delay, deny, refuse, and minimize claims payments by GEICO.

65.    The litigation process and tactics engaged in by GEICO, its employee representatives, and its hired counsel are further designed to annoy, scare, and wear out policy holders like Plaintiff who make damages claims following motor vehicle collisions.

66.    When Plaintiff's case went to trial in Beaufort County in February 2014, a duly appointed jury of twelve objective members of Plaintiff's community determined that Plaintiff had suffered $250,000 in actual damages as a result of the subject collision.

67.    Plaintiff had previously offered to settle all claims arising under her underinsured motorist coverage with GEICO by way of filing an offer of judgment for $25,000, which she believed to be the limits of available coverage she purchased from GEICO.

68.    Prior to trial, GEICO sent its representative, Defendant Cogdill herein, to a mandatory mediation conference.

69.    Upon information and belief, Defendant Cogdill was not an actual participant in the evaluation of Plaintiff's claims for underinsured motorist benefits in this matter.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

70.     Upon information and belief, Defendant Cogdill held herself out to be an employee and representative of GEICO at Plaintiff's mediation conference, as she has done similarly in many, many other instances.

71.     Upon information and belief, Defendant Cogdill attended the mediation conference in Plaintiff's case without being the normal adjuster assigned to evaluating Plaintiff's claims.

72.     Upon information and belief, Defendant Cogdill was required to attend and participate in the mediation conference in Plaintiff's case pursuant to and while being governed by GEICO's internal claims handling procedures and mechanisms, and GEICO in part controlled her activities and responses at the time of mediation.

73.     Upon information and belief, Defendant Cogdill attended the mediation conference in Plaintiff's case without the authority to pay or offer Plaintiff the limits of underinsured motorist coverage available under her policy with GEICO.

74.     Mediation is required in Beaufort County, South Carolina, pursuant to court rule, in all civil cases prior to trial.

75.     The mediation process is governed by court rules and is designed to promote settlement of cases such that our court system is not overly burdened with unnecessary jury trials.

76.     The mediation process in South Carolina requires someone with decision making ability and with full authority over the claims on the part of the insurance company to appear in person, participate in good faith, and be able to settle a case up to the amount of the available insurance policy limits or Plaintiff's last settlement demand.

77.     Defendants did not follow these rules or participate in mediation in good faith in this instance involving Plaintiff Aye Aung, and this is a common practice followed by GEICO and its employees.

78.     GEICO and its employee representatives, including specifically Defendant Cogdill herein, pursuant to company policy and design, routinely and frequently fail to participate in mediation in good faith or in compliance with the rules governing mediations in South Carolina.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

79.    GEICO and its employee representatives frequently and routinely send someone such as Defendant Sharon Cogdill to civil mediations who are not the actual decision makers or evaluators on particular cases, and GEICO merely gives these individuals a predetermined amount of authority without the ability to change their mind or make any meaningful efforts toward claims resolution on behalf of their policy holders.

80.    GEICO and its employee representatives, including Defendant Sharon Cogdill herein, routinely and systematically fail to give adequate and meaningful evaluation to their policy holders' claims for noneconomic damages such as physical pain and suffering, loss of enjoyment of life, mental anguish, fear and anxiety, inconvenience, and punitive damages.

81.    This process has been going on for years pursuant to GEICO's corporate model, internal policies and procedures, and claims handling practices.

82.    At all times leading up to the trial in this matter, GEICO and its hired counsel continued to deny liability without meritorious grounds on behalf of the at fault driver for this collision, thereby causing additional expense, fear and anxiety, and delay for the Plaintiff.

83.    At all times leading up to the trial in this matter, GEICO and its hired counsel continued to deny liability without meritorious grounds on behalf of the at fault driver for this collision, thereby forcing Plaintiff and her counsel to incur expenses and hassle associated with compelling eye witnesses to attend trial pursuant to subpoena to come testify and confirm that the subject collision was solely the fault of the adverse driver Meredith Lynn Daley.

84.    During their claims evaluation and defense processes, and throughout the defense of the litigation, GEICO and its hired counsel never bothered to interview or question the eye witnesses to the collision who would have confirmed that the fault for the subject collision rested solely with the adverse driver Meredith Lynn Daley, thereby forcing their policy holder Plaintiff Aye Aung to suffer additional stress and anxiety, delay and expense, all the while believing that her own insurance company was blaming her for causing this horrific collision, which was not true.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

85.    During their claims evaluation and defense processes, and throughout the defense of the litigation, GEICO and its hired counsel never bothered to interview or question the passenger in Meredith Lynn Daley's vehicle, who was a friend of hers who would have confirmed that the fault for the subject collision rested solely with the adverse driver Meredith Lynn Daley, and would have also confirmed that this driver had been up late the night before the collision and was engaged in drinking alcohol and other dangerous behaviors.

86.    This too forced their policy holder Plaintiff Aye Aung to suffer additional stress and anxiety, delay and expense, all the while believing that her own insurance company was blaming her for causing this horrific collision which was not true.

87.    An automobile insurance company when faced with a claim for benefits by their own policy holder should always interview all known material witnesses regarding the facts of the collision and make reasonable evaluations concerning fault or liability.

88.    GEICO failed to do this with respect to Aye Aung's claims by failing and refusing to interview several readily available eyewitnesses to the collision, or by doing so and refusing to admit the obvious facts concerning liability for the collision.

89.    GEICO's recalcitrant and bad faith conduct in evaluating and defending the claims of their own policy holder following a severe traffic collision caused their insured Plaintiff Aye Aung and her counsel to needlessly prepare for a trial with disputed liability when liability should have been stipulated or admitted from the moment that defense counsel was retained to file an answer to the lawsuit.

90.    Following the jury trial in this matter, GEICO through their retained counsel made a motion for a new trial seeking to invalidate the jury verdict awarded to their policy holder Aye Aung.

91.    This post trial motion pursued by GEICO was without merit and was denied summarily by the presiding trial judge.

92.    GEICO's pursuit of a post trial motion in this matter also caused additional stress and anxiety to their policy holder Aye Aung, and such was further evidence of bad faith practices by continuing to deny GEICO's policy holder the insurance benefits due to her under the subject automobile insurance policy when her claims had been duly considered and validated by a unanimous verdict of twelve jurors.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

93.    GEICO and its employee representatives forced Plaintiff to go to trial in order to prove her damages claims, and then after the trial confirming Plaintiff's claims, GEICO failed and refused to pay the amount of the jury verdict.

94.    The actual damages award entered by the Court in this matter following jury trial exceeded the available underinsured motorist coverage benefits purchased by Plaintiff under the subject automobile insurance policy.

95.    Following the trial, Plaintiff and her counsel were forced to file post trial motions seeking recovery of costs, interest, and other penalties prescribed by court rules and statutes in South Carolina to the prevailing party in a civil lawsuit.

96.    GEICO, having assumed and exercised control over the defense of their policy holder's legal case all the way through trial, is responsible to pay the outcome of the trial verdict, including particularly all penalties, costs, interest, and other items provided to the prevailing party under court rules and statutes in South Carolina following a civil trial.

97.    The court following a hearing on Plaintiff's post-trial motion ruled in her favor in January 2015, awarding costs, interest, and other penalties duly prescribed by court rule and statute, thereby making the total judgment entered in Plaintiff's civil lawsuit to be $274,659.99.

98.    This judgment has continued to gain post judgment interest by law.

99.    The penalties, recoverable court costs, pre-judgment interest, and other similar items added to the judgment in this action in post trial fashion are extra-contractual damages owed to the prevailing party from the defending party in a civil lawsuit, and these items added to the judgment in this case are not limited or excluded by any contract or insurance policy provision issued by GEICO as they are statutory in nature.

100.    Despite this series of events, GEICO and its employee representatives have continuously failed and refused to pay to this policy holder the amount of the jury verdict, nor any of the statutory costs, pre-judgment interest, and other penalties awarded to their policy holder by the court.

101.    GEICO's policy of insurance in this matter can not contravene, avoid, limit, or refuse to abide by the laws and court rules of the State of South Carolina.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

102. GEICO and its employee representatives herein, if they had acted reasonably, with due care, and in good faith with respect to Plaintiff's claims for underinsured motorist benefits, knew or should have known of the likelihood that Plaintiff's claims would exceed the amount of coverage available under her policy if Plaintiff were forced to go to trial.

103. GEICO and its employee representatives, if they had acted reasonably, with due care, and in good faith, could have and should have settled all claims presented by Plaintiff under her policy in exchange for $25,000 and avoided a trial, but they repeatedly and systematically chose not to do so.

104. Following the jury trial in this matter, GEICO only paid Plaintiff $50,000 claiming a policy coverage limitation under their insurance contract with Plaintiff, thereby leaving nearly $200,000 in unpaid verdict exposure.

105. Following the jury trial in this matter, GEICO has repeatedly and systematically failed and refused to pay to Plaintiff any attorney fees, court costs, travel expenses, pre-judgment interest, post- judgment interest, or excess verdict exposure.

106. Plaintiff is entitled to certain financial remedies beyond the amount of her coverage purchased through GEICO by state law and local court rule, and these remedies are extra contractual in nature.

107. Yet, GEICO and its employee representatives, in this instance involving Plaintiff Aye Aung and in many other instances, have consistently failed and refused to pay to its policy holders these extra contractual remedies to which they are legally entitled, with said conduct being in bad faith.

108. Each and all of the Defendants herein acted in bad faith, without due care or reasonableness, and in derogation of their legal and contractual duties to Plaintiff Aye Aung by reason of their efforts to deny, delay, minimize, and otherwise defeat Plaintiff's claims for benefits under her automobile insurance policy.

109. In so doing, each and all of the Defendants herein followed the systematic corporate model policies and procedures adopted and enforced by GEICO to minimize claims payments to their policy holders in order to further maximize their own profits.

110. This conduct by each and all of the Defendants herein is capable of repetition, and it has been continually repeated by the Defendants herein for years.

111.    This conduct by each and all of the Defendants herein started from the instance Plaintiff first put GEICO on notice of her claims, and continued throughout the claims evaluation, mediation, and litigation processes, and continued through the course of the jury trial, and continued beyond and after the completion of the jury trial.

112.    This conduct by each and all of the Defendants herein was a deliberate and concerted course of bad faith insurance claims conduct on the part of GEICO and its employees which is all calculated to delay, deny, refuse, and avoid their policy holders the insurance coverage benefits to which they are legally entitled pursuant to automobile insurance policies issued throughout the State of South Carolina, and it is all part of their normal course of dealing when evaluating and defending claims presented by their own policy holders.

113.    An automobile insurance company should never prioritize its own profits over the well being of its policy holder, and GEICO and its employee representatives routinely do this much as they have done in the case involving Aye Aung.

114.    An automobile insurance company should never put its own interests ahead of those of its policy holders, and GEICO and its employee representatives routinely do this much as they have done in the case involving Aye Aung.

115.    This action is timely filed, and all necessary and proper parties are named and joined herein.

116.    All of the Defendants herein have sufficient minimum contacts with the forum jurisdiction, and venue is proper in the Beaufort County Court of Common Pleas.

117.    The subject traffic collision which injured Aye Aung, and her legal case filing, and her mediation prior to trial, and her jury trial, all occurred within Beaufort County, South Carolina.

118.    All of the preceding and following allegations are incorporated and restated as to each cause of action below herein.

## FOR A FIRST CAUSE OF ACTION
### (Bad Faith Insurance Practices)

119.    Each and all of the Defendants herein owe their insurance policy holders, including specifically Plaintiff herein, a duty of good faith and fair dealing, implicit in the insurance contract issued by GEICO to Aye Aung.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

120.   Each and all of the Defendants herein owe their insurance policy holders, including Plaintiff herein, a duty assist its customers in processing, evaluating, investigating, and paying all claims presented under the insurance policy in good faith, with due care, with adherence to legal precedent and court rules, and with honesty in fact.

121.   Each and all of the Defendants owe their insurance policy holders, including Plaintiff herein, a duty to refrain from doing anything that may unjustly impair of prevent Plaintiff from receiving the full benefits owed to her under the subject insurance policy.

122.   Each and all of the Defendants owe duties to their insurance policy holders, including particularly Plaintiff herein, to promptly tender all benefits not legitimately in dispute.

123.   Each and all of the Defendants owe duties to their insurance policy holders, including particularly Plaintiff herein, to participate in the mediation process in good faith, with due care, and consistent with court rules.

124.   Each and all of the Defendants owe duties to their insurance policy holders, including particularly Plaintiff herein, to refrain from forcing injury victims into unnecessary litigation.

125.   Each and all of the Defendants owe duties to their insurance policy holders, including particularly Plaintiff herein, to refrain from raising unmeritorious denials and defenses during the litigation process.

126.   The individual Defendant herein, Sharon Cogdill, voluntarily undertook and assumed these duties owed to Plaintiff by her conduct and participation in the events outlined herein, including specifically her appearance and participation at a mediation conference without proper authority or evaluation over Plaintiff's claims.

127.   Each and all of the Defendants herein have acted in bad faith, and without due care, with respect to Plaintiff's claims for underinsured motorist benefits following the subject traffic collision which caused her injuries and other damages.

128.   Each and all of the Defendants have violated the implied covenant of good faith and fair dealing implicit in the policy of automobile insurance purchased by Plaintiff,

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

and they have acted wrongfully, unreasonably, and in bad faith, in many particulars, including but not limited to:

a.  Failing and refusing to make a fair, prompt, and adequate investigation into Plaintiff's claims under the insurance policy;

b.  Failing and refusing to make reasonable efforts to settle Plaintiff's claims under the subject policy;

c.  Failing and refusing to give adequate measure and consideration for Plaintiff's noneconomic losses claimed, such as pain and suffering, physical impairment, loss of enjoyment of life, mental anguish, emotional distress, fear and anxiety, inconvenience, and other legally compensable items of loss that become an injury victim and are material elements of damages recoverable in a negligence action in South Carolina;

d.  Failing and refusing to have someone with actual policy limit authority and decision making ability attend a mandatory mediation conference;

e.  Failing and refusing to give adequate measure and consideration for Plaintiff's claims of punitive damages;

f.  Failing and refusing to pay all benefits not reasonably in dispute;

g.  Failing and refusing to pay the amount of a jury verdict entered;

h.  Failing and refusing to pay extra contractual remedies owed to Plaintiff as a result of the carrier's decisions to force a jury trial;

i.  Forcing Plaintiff to endure the expense, delay, hassle, inconvenience, stress, and uncertainty associated with litigation and a jury trial;

j.  Failing and refusing to admit facts not reasonably in dispute relating to fault or liability for the collision giving rise to Plaintiff's claims;

k.  Failing and refusing to provide Plaintiff with any reasonable or justifiable basis for denying Plaintiff's claims in relation to the insurance policy, the facts, or applicable law;

l.  Failing to adopt, implement, and follow proper claims handling policies and procedures to permit for fair, adequate, and prompt evaluation or conclusion of first party coverage claims;

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

m. Causing post trial motions without merit to be pursued in an effort to deny benefits due to their own policy holder;

n. Failing and refusing to acknowledge a court order granting their policy holder certain post trial remedies which are recoverable by the prevailing party in a civil action pursuant to court rules and statutes;

o. Allowing its counsel to raise and pursue legal defenses and factual denials during the course of litigation that are without merit; and,

p. In such other particulars to be demonstrated by the evidence at trial.

129.   Each and all of the Defendants herein have acted in bad faith and in an unreasonable manner with respect to Plaintiff's claims for benefits under the subject policy of insurance, and as such, Plaintiff is informed and believes she is entitled to recover attorney fees and costs, pursuant to S.C. Code Section 38-59-40 and all other applicable law.

130.   As a direct and proximate result of Defendants' bad faith refusal to fairly, adequately, and promptly evaluate and respond to Plaintiff's insurance claims, and also their conduct throughout the litigation process and following the trial, Plaintiff has suffered actual and consequential damages.

131.   Plaintiff is entitled to judgment against each and all of the Defendants herein, jointly and severally, for actual damages, for punitive damages, for pre judgment interest, for post judgment interest, for attorney fees and costs, and for such other and further relief as this Court deems just and proper.

## FOR A SECOND CAUSE OF ACTION
### (Negligence)

132.   Each and all of the Defendants herein owe certain duties at law to the Plaintiff by reason of an implied duty of good faith inherent in every contract of insurance, by common law, and by voluntary undertaking.

133.   Each and all of the defendants breached the duties of care owed to Plaintiff by their careless, negligent, grossly negligent, reckless, willful and wanton conduct and omissions as follows:

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

a. Failing to fully and fairly investigate the matter;

b. Failing to make a reasonable settlement offer;

c. Failing to participate in mediation in good faith;

d. Failing to attend and participate in mediation in a manner consistent with court rule and legal precedent;

e. Failing to fully and fairly evaluate the value of Plaintiff's claim;

f. Failing and refusing to pay to the Plaintiff first-party insurance benefits which were not reasonably in dispute;

g. Failing and refusing to give adequate measure to all elements of harm suffered by Plaintiff following her car wreck;

h. Failing to adopt, implement, and follow proper claims handling policies, procedures, and other mechanisms to permit the fair, adequate, and prompt evaluation or conclusion of first party coverage claims;

i. Failing to properly analyze the risks associated with the litigation and the denial of first party coverage benefits;

j. Forcing the Plaintiff to endure litigation against her wishes;

k. Forcing the Plaintiff to endure a jury trial against her wishes;

l. Failing to pay the Plaintiff the award of damages awarded by the jury;

m. Failing to pay the Plaintiff's attorney's fees, costs, interest, expenses, and other penalties to which she is entitled under South Carolina law;

n. Failing to act as a reasonably prudent insurance adjuster or insurance company would act under the same or similar circumstances; and,

o. Such other and further particulars as will be demonstrated at trial.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

134.    As a direct and proximate result of the careless, negligent, grossly negligent, reckless, willful and wanton conduct and omissions of the Defendants herein, Plaintiff has suffered actual and consequential damages.

135.    Plaintiff is entitled to judgment against each and all of the Defendants herein, jointly and severally, for actual and consequential damages, for attorney fees and costs, for punitive damages, for pre-judgment interest, for post-judgment interest, and for such other and further relief as this Court deems just and proper.

## FOR A THIRD CAUSE OF ACTION

### (Declaratory Relief under S.C. Code Section 15-53-10 et. seq.)

136.    In addition to the claims for bad faith and negligence raised herein above, Plaintiff brings this action for declaratory relief against Defendant GEICO, pursuant to the Uniform Declaratory Judgments Act under S.C. Code Section 15-53-10 et. seq., and all other applicable law.

137.    As recited in her post-trial motion and herein above, Plaintiff was entitled to receive additional extra-contractual remedies by statute and by court rule which Defendant GEICO has refused to pay and which are not limited or excluded by any contractual provision in GEICO's insurance policy insurance policy issued to Plaintiff.

138.    GEICO has denied and refused to pay to Plaintiff the post-trial remedies to which she is legally entitled, and Plaintiff seeks declaration from this Court that GEICO is responsible to pay same.

139.    In addition to the declaratory relief sought herein, Plaintiff is entitled to receive her attorney fees, costs, and other relief from Defendant GEICO by forcing her to pursue this action against her wishes, pursuant to S.C. Code Section 15-53-100, and 15-53-120, and all other applicable law.

WHEREFORE, having raised her Complaint herein against the Defendants, GEICO and Sharon Cogdill, Plaintiff prays that this court inquire into the matters set forth herein and grant her judgment against each and all of the Defendants, jointly and severally, for all actual and consequential damages, for punitive damages, for pre judgment interest, for post judgment interest, for attorney fees and costs, and for such other and further relief as this Court deems just and proper.

ELECTRONICALLY FILED - 2017 Feb 01 1:11 PM - BEAUFORT - COMMON PLEAS - CASE#2017CP0700162

/S/ PATRICK W. CARR
Patrick W. Carr, Esquire
S.C. Bar No. 15585; Fed. I.D. No. 07190
BERRY & CARR, P.C.
Attorneys at Law
2 Spanish Wells Road
Hilton Head Island, SC 29926
Dated: February 1, 2017                Phone: (843) 686-5432
                                       Facsimile: (843) 785-6173
Hilton Head Island, South Carolina     Email: patrick@hiltonheadlawyers.com
                                       *Attorneys for Plaintiff Aye Aung*